## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION

CASE:

**KARMA GROUP, L.L.C.,**
**GUAMAS RESTAURANT,**                    **VERIFIED CIVIL RIGHTS**
**THE RABBIT HOLE,**                      **COMPLAINT and APPEAL**
**NIGHT TOWN, and SHAKERS**


**VERSUS**                                **JUDGE**

**LAFAYETTE CONSOLIDATED**                **MAGISTRATE**
**GOVERNMENT; LAFAYETTE**
**CITY-PARISH COUNCIL MEMBERS;**
**DEE STANLEY, DIRECTOR (Chief Administrative**
**Officer of Lafayette Consolidated Government)**
**; CITY-PARISH PRESIDENT, JOEY DUREL;**
**JIM CRAFT, LAFAYETTE**
**POLICE DEPARTMENT**
**CHIEF OF POLICE,  B. TIM MELANCON,**
**ALCOHOL & NOISE CONTROL MANAGER**
**CITY OF LAFAYETTE, CAPTAIN JIMMY**
**SMITH, LAFAYETTE POLICE DEPARTMENT**
**and ABC INSURANCE COMPANY.**

**JURY TRIAL DEMANDED**
_____

### VERIFIED CIVIL RIGHTS COMPLAINT AND APPEAL

TO THE HONORABLE, THE UNITED STATES DISTRICT COURT IN AND
FOR THE WESTERN DISTRICT OF LOUISIANA, LAFAYETTE DIVISION


The Complaint of KARMA GROUP,  GUAMAS RESTAURANT, THE

RABBIT HOLE,  NIGHT TOWN, and SHAKERS hereinafter referred to as "The Plaintiffs," and Appeal of the Lafayette City-Parish council's November 15, 2011 and subsequent decisions, represents:

<u>Parties</u>

1.

The Plaintiffs are KARMA GROUP, L.L.C. (hereinafter referred to as "KARMA") located and doing business at 314 Jefferson Street, Lafayette Parish, Louisiana, GUAMAS RESTAURANT (hereinafter referred to as "GUAMAS") located and doing business at 302 Jefferson Street, Lafayette Parish, Louisiana, LIQUID ASSETS ENTERTAINMENT, LLC d.b.a. THE RABBIT HOLE (hereinafter referred to as "THE RABBIT HOLE") located and doing business at 220 Johnston Street, Lafayette Parish, Louisiana , NIGHT TOWN (hereinafter referred to as "NIGHT TOWN"), located at 524 Jefferson Street, Lafayette Parish, Louisiana and SHAKERS MARTINI BAR and NIGHT CLUB, LLC, (hereinafter referred to as "SHAKERS") located and doing business at 222 Jefferson Street, Lafayette, Louisiana 70501 all of the aforementioned formed lawfully under Louisiana State Law and in good standing with the Louisiana Secretary of State.

2.

Made Defendants herein are (hereinafter sometimes collectively referred to as "Defendants"):

(A)     LAFAYETTE CONSOLIDATED GOVERNMENT, is a local government subdivision which operates under a home rule charter under the authority of Article VI, Section 5 of the Louisiana Constitution of 1974 and the employer of LAFAYETTE CITY-PARISH COUNCIL MEMBERS, DIRECTOR (Chief Administrative Director of Lafayette Consolidated Government) DEE STANLEY, CITY-PARISH PRESIDENT, JOEY DUREL, LAFAYETTE POLICE DEPARTMENT CHIEF OF POLICE, JIM CRAFT, LAFAYETTE POLICE and DEPARTMENT MANAGER OF SERVICES DIVISION OF THE OFFICE OF ALCOHOL & NOISE CONTROL, B. TIM MELANCON and CAPTAIN JIMMY SMITH, LAFAYETTE POLICE DEPARTMENT.

(B)     LAFAYETTE CITY-PARISH COUNCIL MEMBERS through NORMA A. DUGAS, CLERK OF COUNCIL, in their individual capacity and official capacity as acting City-Parish Council Members, at all times relevant herein working for the Lafayette Consolidated Government and acting under the color of statutes, ordinances, regulations, customs, and usages of the State of Louisiana;

( C)     DIRECTOR (Chief Administrative Officer of Lafayette Consolidated Government) DEE STANLEY, in his individual capacity and official capacity as acting Director at all times relevant herein working for the Lafayette Consolidated Government and acting under the color of statutes, ordinances, regulations, customs, and usage of the State of Louisiana;

(D)     LAFAYETTE CITY-PARISH PRESIDENT, JOEY DUREL, in his individual capacity and official capacity as acting City-Parish President, at all times relevant herein working for the Lafayette Consolidated Government and acting under the color of statutes, ordinances, regulations, customs, and usages of the State of Louisiana;

(E)      LAFAYETTE POLICE DEPARTMENT CHIEF OF POLICE JIM CRAFT, in his individual capacity and official capacity as the Chief of Police for the Lafayette Police Department, at all times relevant herein working for the Lafayette Consolidated Government and acting under the color of statutes, ordinances, regulations, customs, and usages of the

State of Louisiana;

( F )     LAFAYETTE POLICE DEPARTMENT MANAGER OF SERVICES
DIVISION OF THE OFFICE OF ALCOHOL & NOISE CONTROL,
B. TIM MELANCON, in his individual capacity and official capacity as
the Manager of the Lafayette Police Department Services Division, Office
of Alcohol & Noise Control, at all times relevant herein working for the
Lafayette Consolidated Government and acting under the color of
statutes, ordinances, regulations, customs, and usages of the State of
Louisiana;

(G)     CAPTAIN JIMMY SMITH, LAFAYETTE POLICE DEPARTMENT,
in his individual capacity and official capacity as the Lafayette Police
Officer in charge of managing and enforcing the "Points" system for the
Lafayette Consolidated Government, at all times relevant herein working
for the Lafayette Consolidated Government and acting under color of
statutes, ordinances, regulations, customs, and usages of the State of
Louisiana;

(H)     ABC INSURANCE COMPANY, as insurer of all defendants with
coverage for the damages alleged herein.

## JURISDICTIONAL STATEMENT

3.

The Plaintiffs bring this action for injunctive and/or declaratory relief and for

monetary damages against defendants for violation of the Civil Rights Act of 1866, *viz,*

Title 42 U.S.C. §§ 1983, 1985, 1986 and 1988.  Jurisdiction is based on 28 U.S.C. §§

1331, 1343(a)(3), 1983, 1985, 1986, and 1988; the Fourth, Eighth and Fourteenth

Amendment to the Constitution of the United States of America; and Louisiana Civil

Code Article 2315.  The Plaintiffs further invokes the supplemental jurisdiction of this

Court pursuant to 28 U.S.C. § 1367 to hear claims arising under state law.  Venue lies in this Court pursuant to 28 U.S.C. § 1391(b)(2), as the events giving rise to this claim occurred within this judicial district.

## THE SPECIAL LAW ENFORCEMENT LEVY/TAX

### 4.

On or about February 2009 the Lafayette Consolidated Government (hereinafter referred to as "LCG"), relying on Louisiana Revised Statute 26:493[1], approved Ordinance Number O-030-2009 (hereinafter referred to as "the Ordinance") Section 50-50, Special Law Enforcement Levy (hereinafter referred to as "The Levy").  LCG concluded arbitrarily and without any information, statistics, or verifiable data in the body of the Ordinance that Subject Liquor Establishments and Subject Restaurant Establishments located in the downtown area necessitated a higher level of security and as such would place "an inordinate strain on the resources of the Lafayette Police Department.  LCG approved the Ordinance and The Levy to cover and/or reimburse the LCG costs incurred for providing security on the streets of the designated

_____

[1]      Sec. 6-4. Suspension or revocation in the City of Lafayette.  (b) "The Director shall have the right to suspend or revoke any retail permit issued pursuant to this article to retail delears of beverages of high alcoholic content for causes set forth in La.R.S. 26:90 or 26:91, or for violation of any of the provisions of this Chapter, or for violation of any ordinance authorized by La.R.S. 26:493."

geographical area in downtown Lafayette where the Subject Establishments were located. The Levy designated a geographical area in downtown Lafayette, Lafayette Parish, Louisiana and certain business located therein namely "Subject Liquor Establishments" and "Subject Restaurant Establishments" with a class A liquor license were subject to The Levy.    LCG created an arbitrary formula that assessed each designated Subject Establishment with a monthly cost to cover and/or reimburse costs incurred for providing security i.e., Lafayette City Police officers on the downtown streets.    LCG later amended O-030-2009 with Ordinance O-095-2010 and incorporated Section 50-50.  Failure to pay The Levy each month in full would result in the assessment of a ten (10%) late fee of the amounts owed.  If payment of the Levy is not thereafter made the "default shall result in the suspension of any and all licenses, certificates of occupancy or other permits held by the subject establishment in default for three (3) days".  If the establishment fails to pay the Levy on two (2) occasions without curing both defaults during a one (1) year period LCG will suspend any and all licenses, certificates of occupancy or other permits held by the establishment in default for thirty (30) days.  If the establishment fails to pay the Levy on three occasions without curing all of the defaults LCG will suspend any and all licenses, certificates of occupancy or other permits held by the establishment in default for one (1) year.

5.

LCG does not require all Subject Liquor Establishments and Subject Restaurant Establishments located within the geographical area and who have a Class A liquor license to pay the Special Law Enforcement Levy/Tax.

6.

The Plaintiffs in applying for licenses, certificates of occupancy or other permits where not advised that a "Special Law Enforcement Levy" was a special condition and/or requirement for the issuance of any licenses, certificates of occupancy or other permits nor were they advised that there was a special "geographical area" fixed by LCG wherein a Special Law Enforcement Levy/Tax would be imposed and the penalties for failure to pay the Levy/Tax. The Plaintiffs were later assessed this Special Law Enforcement Tax after the fact and LCG has used the suspension of any and all licenses, certificates of occupancy or other permits as a coercive threat and extortion against The Plaintiffs if they failed to pay and continue to pay the Special Law Enforcement Tax.

7.

The Plaintiffs began paying the Special Law Enforcement Levy/Tax and each term LCG would cite some arbitrary and unverifiable data as a reason to increase the Levy/Tax. The Levy/Tax more than doubled over a period of time. The Plaintiffs refused to pay and to continue paying The Levy to LCG on grounds that The Levy is an unconstitutional tax imposed by a municipality for security i.e., police presence

on the streets of downtown Lafayette.  The Levy is a tax imposed in addition to and above taxes that The Plaintiffs were already assessed by LCG for Police Security. The Plaintiffs advised LCG that they were refusing to pay the Special Law Enforcement Levy/Tax  on the grounds that it was an unconstitutionally imposed tax, discriminatory, unfair, arbitrary, capricious and a violation of due process.

8.

LCG is relying on Louisiana Revised Statute 26:493 to enforce any violations of The Levy.  La.R.S. 26:493 Local regulatory ordinances reads as follows:

> Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3 of this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages.  No parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace.  Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits.

9.

LCG is not relying on La. R.S. 26:493 to regulate the business of selling alcoholic beverages but is attempting to use La.R.S. 26:493 to impose a Special Tax on a select group for police security on the streets of downtown Lafayette and then imposing sanctions of suspension of liquor licenses and permits for failure to pay the

Levy/Tax.  The security of the streets of downtown Lafayette or any other area are the direct responsibility of LCG for which they assess the citizens of Lafayette various taxes.  La. R.S. 26:493 does not envision or speak to law enforcement and/or security issues as it may affect certain areas of a city nor does it contemplate a parish or municipality using the statute to create a special law enforcement levy/tax to cover and/or reimburse a municipality for those "security" cost that a municipality has previously imposed and collects taxes to cover.

10.

On October 11, 2011 and subsequently the Director, Dee Stanley and Alcohol & Noise Control Manager, Tim Melancon conducted a "hearing" where The Plaintiffs were asked if they intended to pay the amount LCG claimed they owed in default for the Special Law Enforcement Levy/Tax.  The Plaintiffs advised the Director and Alcohol & Noise Control Manager that they did not intend to pay the Levy/Tax.  The Plaintiffs advised the Director and Alcohol & Noise Control Manager that the Ordinance and Section 50-50, Levy/Tax, was unconstitutional and that the statute that LCG was relying on, La.R.S. 26:493, did not authorize the actions contemplated by LCG.  The Plaintiffs further advised LCG that it was acting without Legislative authority and/or usurping the authority of the Louisiana Legislature.

11.

On October 17, 2011 and subsequently the Alcohol & Noise Control Manager

issued a Notice to The Plaintiffs advising them that it was the decision of the Director to suspend their alcoholic beverage permit beginning Thursday, November 10, 2011 at 6 a.m. continually until Sunday, November 13, 2011 at 2 a.m.. Plaintiff's filed a notice of appeal to the Lafayette City-Parish Council for a review of the Director's decision as to whether the Director "acted reasonably and in good faith." Plaintiff's appeal to the Lafayette City-Parish Council was heard on November 15, 2011 by the City-Parish Council and thereafter voted seven to one (7-1) to uphold the Director's decision to suspend the Plaintiff's alcoholic beverage permits.

12.

The Plaintiffs have paid thousands of dollars to LCG pursuant to the Special Law Enforcement Levy/Tax and now seek to recover reimbursement from LCG for those monies already paid to LCG.

13.

The Plaintiffs will suffer serious and irreparable harm in the significant loss of income and customers by the three (3) day suspension set to be imposed and by further suspension for thirty (30) days and one (1) year for their continued failure to pay the Special Law Enforcement Levy/Tax.

14.

The Plaintiffs submit his as their appeal to the Lafayette City-Parish Council's ruling on November 15, 2011 and further submit this as their complaint against LCG

from exercising and/or enforcing any form of suspension as contemplated in the

Ordinance and Section 50-50 as being unconstitutional.

## THE POINTS SYSTEM

### 15.

On or about August 1, 2005 LCG approved Ordinance Number O-180-2005.

The Ordinance contained section 6-11.  Public nuisances in the City of Lafayette;

factors to be considered; procedure to abate; penalty and revocation.  Paragraph (a)

of Section 6-11 reads as follows:

> (a)    It shall be unlawful for any permittee's establishment, place of business,
> and/or premises to become a public nuisance and against the public good
> and welfare of the community.  Any combination of the following
> activities that total to twelve points within any twelve consecutive month
> period shall be considered a public nuisance.  The following points shall
> be assigned to each specified activity:

Paragraph (a) lists five (5) subsections of specified activity and points to be assigned

for each activity and reads as follows:

> (1) High Violent Crime Activity: Arrests wherein any person sustained a physical
> injury on the premises of the establishment; or wherein any person sustained a
> physical injury from activities arising out of the premises of the establishment.
> Four (4) points;

> (2) Drug-Related Activity: Arrests for any violation of any provision of the
> Louisiana Uniform Controlled Dangerous Substance Act, La.R.S. 40:961, et seq.
> On the premises of the establishment; or for activities arising out of the premises
> of the establishment.  Four (4) points;

>  (3) Prostitution-Related Activity: Arrests for prostitution or solicitation for

prostitution or any related provisions of the Louisiana Criminal Code, La. R.S. 14:82, et seq., or any corresponding city or parish ordinance on the premises of the establishment; or for activities arising out of the premises of the establishment.  Four (4) points;

(4) Nudity-Related Activity: Any violation of Section 6-73 of this Chapter.  Four (4) points; and,

(5) Disturbance-Related Activity:

A.  Arrests and/or citations arising out of disturbances from the premises of the establishment.  Two (2) points.

B.  Arrests and/or citations arising out of disturbances from the premises of the establishment to residents of normal sensitivities living in any neighborhood adjacent to the premises of the establishment.  Three (3) points.

C.  In evaluating the points assessed against a permittee for a violation of subsections (A) or (B) of Section 6-11(a)(5), the Director may, in his sole discretion, reduce points by up to one-half (½) of the prescribed points if the permittee demonstrates, to the satisfaction of the Director, that the permittee maintained security at the premises by a commissioned law enforcement officer at the time of the incident giving rise to the assignment of the points.

Section 6-11 (5)(A) was amended to read as follows:

A.    Arrests and/or citations arising out of disturbances from the premises of the establishment.  Two (2) point.  Any incident which calls for an allocation of points in the ordinance is left to the discretion of the director. When the establishment has an on premise law enforcement commissioned officer in Lafayette Parish, the points allocated by director shall not exceed ½ of the points as provided in the ordinance.

16.

In Section 6.1, Definitions, the Ordinance defines the following words and/or

terms that appear in Section 6-11 of as follows:

> *Director* means the Chief Administrative Officer of Lafayette Consolidated Government or designee, provided that with reference to premises located in the unincorporated areas of the parish, the term "Director" means the sheriff.

> *Establishment* means any business, trade, calling, profession or vocation and/or any place where any commodities are exchanged, bought, and/or sold, where consumption of alcoholic beverages on the premises is a normal incident of the ordinary operation of the business.

> *Permit* means an official document issued by the Lafayette City Parish Consolidated Goverment's Alcohol Control Office authorizing the sale and or distribution of alcohol beverages reflecting the correct name, address and owner of the premises for which the permit is issued.

> *Permittee* means a person to whom a permit is issued.

> *Premises* means the address for which the permit is issued, whether owned, rented, or leased by the permittee all buildings and structures thereon, and all land and property appurtenant, including parking lots, but excluding any publicly owned streets or sidewalks.

17.

Between August 1, 2005 and May 2, 2010, the L.C.G. did not assign any points

to any permittee's establishment pursuant to the Ordinance's Points System.

18.

Karma received a permit from LCG on or about January 2008 and began doing

business on or about January 24, 2008 at 314 Jefferson Street, Lafayette, Louisiana.

19.

On or about June 29, 2010 defendant, B.  Tim Melancon with the Office of

Alcohol and Noise Control issued an "Informal Hearing Notice" to Karma Group pursuant to the Ordinance Section 6-4 (d).  The Notice advised Karma Group that the hearing was scheduled for July 28, 2010 at 1:30 p.m. and that four (4) police cases were being used to determine whether Karma Group had become a public nuisance with the cases listed as: 1) May 2, 2010 (section 6-11(a)(5)) disturbance-related activity two (2) points; 2) May 30, 2010 disturbance-related activity two (2) points; 3) June 18, 2010 (section 6-11(a)(1)) high violent crime activity eight (8) points ; and, 4) June 25, 2010 disturbance-related activity four (4) points - 2 points each for separate incidents/arrests.

20.

On July 28, 2010 an informal hearing was held by the Director.  At the hearing B. Tim Melancon presented evidence through the testimony of Lafayette Police Department Officers Trahan, Credeur, Mahler, Milazo, Joseph, Grayson, Sices, Martin, Mitcham, Lt. Bashovek, and Captain Smith.  Captain Jimmy Smith testified that LCG had not used the Points System between August 2005 and May 2010 because there was no policy and/or procedure for the assignment of points.  Captain Smith testified that in January 2010 the Lafayette Police Department i.e., Captain Jimmy Smith, Manager B. Tim Melancon and Chief of Police Jim Craft devised a policy and/or procedure from which to assign points to permitted establishments.  Captain Jimmy Smith testified that each case was looked at on a "case-by-case" basis.  Captain Smith testified that he, B. Tim Melancon and the Chief of Police, Jim Craft would determine whether points

should be assessed to an establishment even if an arrest and/or citation had been issued

in that case.  Captain Jimmy Smith cited numerous cases where arrests where made and

no points assigned to other establishments and cited a case where a firearm was fired

in the parking lot, individuals were arrested and no points were accessed to the

establishment.

21.

All of the officers who testified stated that every arrest was made outside of

Karma Group's building either on the sidewalk or in the parking lot separating Karma

Group from another downtown establishment, City Bar.  None of the officers who

testified stated that they knew whether any of the arrested individuals had attended

Karma Group or another downtown establishment.  Lt. Bashovek testified that Karma

Group has cooperated with the Lafayette Police Department and enacted policies and

procedures requested by the Lafayette Police Department.

22.

Section 6-11 of the Ordinance is unconstitutional as written and unconstitutional

as it is being enforced.  The Ordinance holds the permitted establishment responsible

for the criminal acts of individuals who are in the permitted establishment, were in the

permitted establishment prior to engaging in criminal activity or who may be in the

immediate area of the permitted establishment i.e., on the sidewalk in front or in the

parking lot of the permitted establishment.  The Ordinance does not require any nexus

between the permitted establishments conduct and the criminal conduct of an individual i.e., no requirement that there be any showing that the permitted establishment encouraged, facilitated, and/or ratified the wrongdoing/criminal actions of individuals who are arrested.

23.

Plaintiff's seeks to have section 6-11 of the Ordinance declared unconstitutional as written and enforced.

24.

The actions of the individual defendants specified above in the sections entitled "The Special Law Enforcement Levy/Tax" and "The Points System" violated clearly established federal statutory or constitutional rights of which a reasonable person would have known.

25.

The actions complained of herein amounts to outrageous conduct and an arbitrary use of governmental power.

26.

The Plaintiffs demand compensatory damages against all defendants, jointly, severally and *in solido,* in an amount in excess of $75,000.00.

27.

As the actions of the defendants involved reckless or callous indifference to, or

at the least, gross negligence with regard to, the federally protected rights of others, the Plaintiffs are entitled to an award of exemplary damages against the defendants, jointly, severally, and *in solido,* in an amount to be determined by the Court.

28.

Because of the denial of the basic civil rights of the Plaintifffs, the Plaintiffs were compelled to retain an attorney to prosecute this action and to insure that this conduct on the part of the defendants does not continue.  The Plaintiffs are, at the discretion of this Honorable Court, entitled to reasonable attorney's fees from the defendants.

29.

The Plaintiffs further demand a trial by jury of all issues so triable as of right by jury.

WHEREFORE, premises considered, Plaintiffs prays that the Ordinance and Section 50-50 and the actions of LCG and the Lafayette City-Parish Council be declared unconstitutional and therefore unenforceable and that each of the defendants be cited to appear and answer, and that, upon final hearing, Plaintiffs recover judgment, jointly, severally, and *in solido*, against all defendants, for compensatory damages, reimbursement and exemplary damages, together with costs of court, interest allowed by law, attorney's fees, and any and all further relief, legal or equitable, to which the Plaintiffs may be entitled.

Plaintiffs further prays for trial by jury.

Respectfully submitted:


*S/DANIEL STANFORD*
DANIEL STANFORD
La. Bar Roll No. 22639
812 Johnston Street
Lafayette, Louisiana 70501
(337) 232-2272

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE-OPELOUSAS DIVISION


**CASE:**_____

**KARMA GROUP, L.L.C.,**
**GUAMAS RESTAURANT,**                    **VERIFIED CIVIL RIGHTS**
**RABBIT HOLE,**                          **COMPLAINT and APPEAL**
**NIGHT TOWN and SHAKERS**


**VERSUS**                                **JUDGE:**_____

**LAFAYETTE CONSOLIDATED**                **MAGISTRATE JUDGE:**
**GOVERNMENT; LAFAYETTE**
**CITY-PARISH COUNCIL MEMBERS;**
**DEE STANLEY, DIRECTOR (Chief Administrative**
**Officer of Lafayette Consolidated Government)**
**; CITY-PARISH PRESIDENT, JOEY DUREL;**
**JIM CRAFT, LAFAYETTE**
**POLICE DEPARTMENT**
**CHIEF OF POLICE,  B. TIM MELANCON,**
**ALCOHOL & NOISE CONTROL MANAGER**
**CITY OF LAFAYETTE, CAPTAIN JIMMY**
**SMITH, LAFAYETTE POLICE DEPARTMENT**

**JURY TRIAL DEMANDED**
_____


## VERIFICATION


STATE OF LOUISIANA

LAFAYETTE PARISH

BEFORE ME, the undersigned authority, personally came and appeared, George Favalor on behalf of NIGHT TOWN who, after being duly sworn, did depose and say that all of the allegations contained in the foregoing Complaint and demand for jury trial are true and correct, to the best of his knowledge, information, and belief, and such allegations were made after reasonable inquiry.


*Signed/George Favalor*
GEORGE FAVALOR
NIGHT TOWN

*Signed/Danny Smith*
DANNY SMITH
KARMA GROUP

*Signed/Julieta Tarazona*
JULIETA TARAZONA
GUAMAS RESTAURANT

*Signed/Shawn Calvit*
SHAWN CALVIT
THE RABBIT HOLE

*Signed/Jason Robino*
JASON ROBINO
SHAKERS


SWORN TO AND SUBSCRIBED before me, the undersigned authority, on this 13th day of January, 2012.


Signed/Daniel Stanford
NOTARY PUBLIC